Good morning, your honors. Michael Tierney for Sister Mary Rose and the other plaintiffs. I have with me Steve Aiden of the Alliance Defending Freedom. I'd like to reserve five minutes for rebuttal, if that would be okay? Evening. We're here today on this appeal to consider whether the pre-enforcement standing exists to challenge a statute that has already delegated the power to control free speech on public sidewalks to private entities, and whether the fact that those private entities can put up signs creating enforceability within minutes or even seconds is sufficiently imminent threat in order to have pre-enforcement standing under the First Amendment. The state is unable to identify a single case in which a government entity has delegated the power to control speech to a private entity and thereby avoids either standing or avoids any review of the government's delegation of power to that private entity at all. The closest case on point is that Tenth Circuit case involving a church that was delegated the power to control speech on a public thoroughfare, and the Tenth Circuit properly held that that was an improper delegation of authority and that you can't have a government entity delegate to a private entity what that government entity can't do. The city of Salt Lake was at issue there. If this court was to adopt the state's position that any number of government entities could just delegate power to private entities in order to control free speech rights on public thoroughfares, and then there would be no judicial review of what the government has done until... Why don't you argue more of the merits of the provision than the issue of standing? I thought we were supposed to be focusing on the standing question. I understand that can be a link, but that really seems to be what you're focusing on. The reason why the focus needs to be on the delegations, that's where the district courts err a lot. The district court thought that until the statute was enforced against somebody, that there wasn't a sufficient threat for there to be standing. There is an even greater threat when the state has already delegated the power of a prison to private entities. I seem to have just mischaracterized what the district court actually held. Would you like to start over on that? Certainly, Your Honor. I think the district court's order was going through a presumption that until those private entities go and draw whatever zones those private entities in their discretion decide to draw, that there's not a threat to my clients who want to engage in free speech activities on the sidewalk. Quite frankly, my clients are having their speech chilled and threatened right now. When you say that they're chilled, do you allege in your complaint that they've refrained from doing anything? I do not allege that they have refrained, but they have altered their activities. Where do you say that they've altered? Paragraph 82 of the complaint. Which says what? I believe it says that they desire to continue to engage, but fear that they will be prosecuted if they desire. They have that desire. Yes. And they have that fear, but that doesn't show that they've altered their conduct in any way. You have the affidavit of Griebusch, who was one of the clinic directors. That's in the joint appendix. And she talks about how threatening to create these zones has resulted in the individuals on the sidewalk engaging in more favorable behavior to the clinic. That she has seen a change in behavior because of the clinic's threat of enforcement. I forget. The standing issue here is based on the complaint. The standing issue should be based on the complaint. So the complaint, though, doesn't suggest there's any alteration of behavior at all? So how can you have standing if you don't even allege that your conduct has altered? The complaint was filed three days before the statute was to go into effect. And prior to the statute going into effect, temporary restraining order was entered against the city of Concord and the town of Derry because of the fact that those two municipalities were prepared to immediately enforce the statute. There was then an agreement that they wouldn't enforce the statute, as well as the state and the other municipalities. And that agreement stayed during the entirety of this action. And so that agreement has minimized the threat, but the threat is there because the private The threat is different than chill. The threat to draw zones is what chills my client's speech. But I'm just wondering, where is the allegation that it was chilled? In other words, if the representation is, I feel bad, but I'm going to keep doing what I'm doing. I'm a little worried while I do it. We don't usually think that's enough to suggest that they're standing. So I'm just wondering how, in this case, as the record comes to us, what am I relying on to suggest that beyond the fact that the statute is what it is, as it comes to us looking at the complaint, it looks like your clients are going to continue to do whatever they were doing and they'll just be worried as they do it. But I guess I just don't know that we've ever suggested that that constitutes chill. That just constitutes not being chilled but feeling bad while you're not chilled. I think that the issue is that my clients are going to continue being out on the sidewalk, but they need to be much more careful in the speech in which they're engaging, the way in which they're engaging in that speech. But none of that's in your complaint. That's what I'm focused on. So I don't quite understand how, on this record, I'm supposed to just assume that must be the case. We have affidavits from the clients after the complaint. We have statements from the clinic directors after the complaint, all of which is a proper inquiry when looking at a motion to dismiss on the basis of standing outside those four corners of the complaint. Counsel, with respect to those affidavits, there are affidavits in the record, I believe, from perhaps two of these clinic directors indicating that really the Supreme Court's decision in McClellan has really transformed the landscape here. If I understand those affidavits correctly, they indicate that in light of that decision, they're much more disinclined to create these buffer zones that are now authorized. In fact, I think maybe one of them says they're just not going to do that. They're sort of taking their direction from that decision. They're going to explore other alternatives. Doesn't that dramatically alter the notion that there's any, whatever formulation you think is correct, that there's a credible threat of enforcement in light of those disavowals of any thought of creating these buffer zones? Isn't that a very important element of the analysis that we have to do here? I agree with you that disavowal is a very important part of the analysis, and if the state and the cities were to disavow themselves, that they would enforce the zones that they were trying to enforce, if the zones are not created in the first place. Right, and the affidavits talk about a desire to be able to quickly put up the zones if the private clinics decide that they want to put up these zones. The district court talked about the fact that this could be done in minutes. During the oral argument, the state admitted this could be done in a total of 30 seconds. And so this is not something that is static going into the future. This is something that, depending on the speech activities happening on the sidewalk, a sign can go up in a shorter amount of time than I've been talking. Can I just ask, what is the, you made it in your opening statement, said, you know, there's a huge problem if you couldn't enforce this in it, you get a pre-enforcement challenge. Why is it a huge problem? Because then the person would have to have their speech either criminalized or they'd have to pardon the bringing. No, no. The reason why we have to have it in a... In a minute, if we held that at least until the zone is enacted, you can't bring a pre-enforcement challenge. Then what's the problem with having a rule that just said that? I understand that you couldn't do a pre-enforcement challenge once the zone was created. You're asking for a pre-enforcement challenge prior to a zone being created. And I don't understand why it's so important that you be able to challenge it  Two things, Your Honor. First is the amount of time between creation and enforcement is zero. As soon as that sign goes up, that is something that's enforced. That's something that the city has said that they will immediately enforce it. The second thing is we have a private entity who has the power to create a zone or change a zone without... But at that moment, before you go into the zone, you could challenge it. That moment, when that sign goes up, my clients are prohibited from engaging in the speech. And they should immediately sue and challenge. And they have the enforcement power right then. But isn't that typical? You don't get to sue... If a statute is going to ban flag bearing, you don't get to challenge the statute before it becomes law. Absolutely, you challenge that flag bearing statute before the effective date of the statute. That's a pre-enforcement challenge. It happens all the time that you ask for the temporary restraining order and preliminary injunction prior to that statute being effective. Which is exactly what happened at the beginning part of this case. We obtained the temporary restraining order prior to the statute being effective on July 10th. Anybody wants to make sure that that statute does not become effective if it violates the First Amendment. You've reserved five minutes. I'm sure you have a lot more to say, but let's hold it until then. May it please the Court. Elizabeth Lahey on behalf of the New Hampshire Attorney General, Joseph Foster. I'd like to focus first on the imminency of injury argument. Specifically, the fact that there's no standing because there's no existing prescription. As well as make a few points about the plaintiff's pre-creation standing theory as well as their unbridled discretion argument. The plaintiffs cannot have a pre-existing standing injury because they currently do not face an existing prescription. They are free today to speak outside of any facility within the state without any fear of enforcement. The plaintiff's fear in this case is based on a highly attenuated chain of fears that the Clapper Court tells us fails under either the certainly impending test or the substantial risk test. And because of that chain of inferences and chain of speculation, that's insufficient to satisfy Article III. If I understand your argument, it's true. You don't have to wait for the effective date to bring a challenge typically to a law, right? I would disagree. Well, the effective date perhaps, but once the... So I guess what he's saying is this is like that. All of a sudden, there's going to be a restriction in place. And so in advance of it being in place, I should be able to challenge it. Just like if there's an effective date for a statute, I don't have to wait until the effective date to bring my pre-enforcement challenge. I can challenge it prior to it going into effect. So what's the difference? I would disagree that that is analogous to what is happening here. In that circumstance, the law has already passed through the legislature. It has already been signed by the governor, and it is guaranteed to go into effect as written on a particular date. So on a particular date, you know that a prescription will exist, a ban on your speech, a ban on your conduct. That is not present here. There's no... There's nothing in place. There's nothing planned to be in place. There's no threat of anything to be in place. Is this one possible? Is that like a better or worse? In terms of... In terms of the potential to chill. The chill needs to be based on a fear that the statute will be enforced against the particular plaintiff. That's the standard that was enunciated in Babbitt, and that's the standard that this Court has adopted. What he's arguing... What the defendants are arguing for is effectively a pre-creation standing doctrine that would be a two-step process rather than the one-step fear of enforcement. And so it would be a fear, first, that a prescription will be created, and then, secondarily, a fear that that prescription will be enforced. And that's a two-step process that he provides no case support for and would be inconsistent with the Court's standing doctrine and the theory of separation of powers. In this case, allowing the plaintiff to have standing before they've been harmed at all would essentially ask this Court to serve as an appellate legislative body and ask them to review a statute and its constitutionality before anyone has been harmed. And the Court's jurisdiction hinges on harm, and there needs to be a case of controversy. The harm is the chill. So it's the desire not to provoke the zone being created, and that's a consequence of a state law that has empowered a private actor to impose a zone. So what's the problem with that logic? There are two problems with that, Your Honor. First is your point that there has been no allegation of any sufficient chill in the complaint, and, secondarily, that even if there was, the chill needs to be based on something objective, that you can't have a subjective fear. And here the fear is purely subjective. There's no evidence that – first of all, there's no prescription. So there's no reasonable fear that anything, any existing prescription can be enforced against them. What the fear is is a fear that a prescription will be created, and that hasn't been recognized by this Court. There's obviously a history behind the legislative initiative. What does the record reveal about the type of activities in which the plaintiffs engage and the response of the clinics to those activities? I assume – that's what I mean by history – that their conviction that if they engage in the activities that they want to engage in, that the clinics will respond to try to prevent it is based on experience, which I assume is reflected to some extent in the record. I mean, these are not imaginary concerns that they have. I gather they're based on their experience in engaging in these activities and then experiencing the response of the clinics to it. What does the record reveal on that? It doesn't reveal any conduct that has been responded to by any of the different facilities. In fact, based on the plaintiff's own allegations, they do not engage in any conduct that – at least based on the affidavits that the Court has – that would prompt a response of creating a buffer zone of any size. The plaintiffs categorically deny that they obstruct access to the facilities, that they harass individuals. They instead allege that they engage in peaceful protest prayer, handing out pamphlets or praying the rosary, for example. If you look at the affidavits that are submitted, the conduct that the executive directors of the particular facilities are talking about in terms of what would prompt them to create a zone are harassment, bomb threats, being aggressive with patrons or potential clients, using expletives and swearing at them. And that is not the type of conduct that the plaintiffs allege that they engage in. So there's nothing in the record to suggest that even if they continue to engage in conduct at any of the facilities at the State, within the State, that the response would be to create a zone. There are affidavits from the protesters that they've refrained from some activity? I would disagree with that representation. They have – throughout the course of this litigation, including when there was a stay, the parties periodically submitted status reports. And in each of those status reports, they indicated that they continued to engage in conduct, that they didn't change their conduct. But I anticipate my opponent's response to that would be they were protected by the stay and the fact that if the State learned that a facility intended to put up a zone, that we would notify the court. But even after those protections have gone away, it's my understanding that they've continued to engage in conduct outside the facilities. There's nothing in the record to suggest, one, that they have stopped or that they've changed. And even if there was, however, that is not enough to get them standing. The change in their behavior would need to be driven by an objectively reasonable fear. And a fear of – a subjective fear of chill is insufficient. And so here, there's no objective fear that they will be subject to criminal prosecution or any punishment when they go to a facility and see that a sign has not been posted. So any chill that they may have is irrational in terms of enforcement. And that's what this court and the U.S. Supreme Court recognize in terms of standing. The creation of a zone is – the fear that a zone will be created is insufficient to create standing. And they provide no case to support that proposition. And in – Why isn't there just a certain common sense to it, though, that if a zone prohibiting speech is going to be created, it can be created instantaneously. And there's every reason to believe that once that zone is in place, if you go into it, you'll be prosecuted. Then the prospect of that thing coming into being, the minute it comes into being, there's going to be a period of time in which your speech is restricted, that period of time in which you suffer a criminal penalty if you go into it before you can get a court to strike it down. And so I think the idea, if I get it, is, well, that's a big First Amendment problem, potentially. And so as long as they can show there's some reason to be changing their conduct now or something, or maybe even they don't even have to show that they've changed their conduct now. Maybe they're just saying, at the moment this happens, we're stuck and there's going to be a First Amendment injury to us during that interim period, given how swiftly this thing can be enacted and how likely the enforcement of it will be. So what's the answer to that? Two responses to that. First, finding standing as it exists now, the court would not have sufficient facts before it to conduct the analysis that was undertaken in McClellan. And this statute is different than the statute in McClellan in that it doesn't create an automatic fixed size buffer zone at every facility throughout the state. What it does is authorizes the creation. So to conduct the analysis in McClellan, first you need to assume that there's a problem at a facility that needs to be remedied. Second, you need to assume that the facility would remedy that problem with a zone as opposed to any other means such as an injunction, enforcing trespass statutes, or disorderly conduct statutes. And even if you draw those assumptions, you would still need to assume, one, what the zone would look like, how big it is, where it's located, why they created the zone, what other mechanisms they tried prior to creating a zone, and whether or not those mechanisms were successful or unsuccessful. That's, again, getting to the merits as opposed to an answer to Judge Barron's question. I had thought, actually, in response to Judge Lopez's question, that there had been instances in the past in which local ordinances which prohibited interference with persons or certain types of conduct had been used and that the clinics had found it was sufficient. They are still on the books. The clinics say they may continue to find them sufficient. Therefore, why go through the rest of this? So am I incorrect on that? I thought that is the record. My understanding is that there is, if I understand, you're referring to Jennifer Frizzell's perhaps testimony before the legislature in which she discusses hypothetically some of the other steps they've taken. And I think to Judge Lopez's question, I understood it to be with respect to these particular plaintiffs. Anything beyond that testimony, there's no record that there's been a problem and that it's been remedied in any particular way. Counsel, in terms of sort of this chilling phenomenon, couldn't there be something a little more subtle happening in this sense? I mean, this law is on books for the plaintiffs. That's reality. I mean, if they were inclined to try to sort of work out and negotiate some kind of an accommodation with the clinics, I mean, the presence of this law on the books gives the clinics a lot of leverage. Does it not? I mean, if they don't get what they want from the plaintiffs who are trying to find out what they can do that the clinics would find to be appropriate, then the clinics can respond with this immediate establishment of a buffer zone. So doesn't it have that kind of, I guess you could consider that a kind of chill. Doesn't it have that effect on their negotiating position if they were inclined to try to work out some kind of accommodation? And if so, does that matter? Is that relevant? It doesn't matter. And in the framework that exists for standing, the fear has to be a fear that an existing prescription will be enforced against the plaintiff. Here there is no existing prescription. To succeed on standing, two things would have to happen. There would need to be an expansion of the doctrine to accept a pre-creation standing, which would be two steps. One, that there's a fear that a prescription will be created, and secondarily, that it will be enforced against them. And then as a second step, the court would also have to find standing in this particular case, ignore the policy considerations behind the recognition of pre-enforcement standing in the first place, which is primarily putting a plaintiff in the position where they're faced with the Hobson's choice of speaking and risking substantial, often criminal penalty, or not speaking and therefore foregoing their rights. And here there is no criminal consequence. The consequence is a written warning. And at that time, the plaintiff could go to court, seek a temporary restraining order, and the district court could, if necessary, deal with it quickly prior to reaching the merits. And the Susan B. Anthony List case suggests that a criminal element to the challenge statute is significant because they don't reach the question about whether a purely administrative penalty is sufficient, but find that because this is a criminal and administrative penalty, that's a sufficient penalty to warrant a chill. And here we have less than the administrative penalty and no criminal component. And then in addition to those additional policy considerations is here there's been no threat of enforcement. In fact, we have disavowal. And so if the court is going to recognize disavowal in the context of disavowing an intention to enforce an existing prescription, it should also give way to the fact that the parties who could create these zones have disavowed any intention to do so. Is that all the possible clinics that are covered have done so? Two have done so by affidavit. And then Jennifer Frizzell represents, is part of Planned Parenthood, who runs the remaining facilities within the state. And based on her testimony, she says that she would not, I think she would not instruct or guide the people within her facility to create zones given the changes in the legal landscape as a result of McCullen. And all of those are tied to McCullen. Thank you. Following up on the state's point, if I may, I think the record is pretty clear there had not been any disavowal by either the government or those actual clinics. If you look at the joint appendix, page 42, you have the affidavit from Linda Grebisch of the Lovering Clinic. And she says that the Lovering Clinic didn't intend to post any zones at that time, but would like to have the tool to be able to do so quickly. And she also says that she wants to be able to have the ability to have the statute on the books in order to negotiate unsafe behaviors with the protesters. Now, some of the unsafe behaviors are such as Sister Mary Rose handing out leaflets to cars coming in and giving a private entity the power of the enforcement of the state behind prohibiting the leafleting is the type of First Amendment activity that is going to be a part of any specific challenge where being prohibited from being able to even introduce those facts to get to the merits, as Judge Lynch was addressing. What do you imagine happening? Suppose you said there's standing, you can bring the challenge now. What would then happen? What would you mitigate? I mean, there would be no zone. So would you say the concept of giving the power to do this is what's unconstitutional? Precisely. Okay. And on that theory, what is it doing to anybody, the power to do this, that the record before us shows is harmful? The power to prevent speech on public sidewalks has been given to a private entity to negotiate what that private entity decides is unfavorable behavior. Is there any allegation that that negotiating power has been used so far? Yes. In the affidavit? Affidavit of Grievous on page 42. Says what? Okay. Where are we here? In significant safeguard, talking about the statute, to have a very useful tool for the claim to have in its toolbox and have been. That's not an allegation that she's used. It's just a recognition that the statute has that in here. What I don't fully understand is without it ever being used in the way you most fear, you would want the whole statute just invalidated. I still can't get. I'm fast-forwarding to 2015, and this is on page 117, where she says, a year after, okay, so I do feel that this law has everybody on their best behavior. So even without being enforced, it has already done some good. The threat of having it enforced, the knowledge that this was coming up for review, I think did make people behave in a better way, and we've been able to work with that. And that is one of the reasons for not wanting to repeal this law. Okay? The clinics have been using the threat of being able to draw zones as a negotiating tool. That's not what she says. That's exactly what she says. No, she doesn't. She says that other people have behaved well in response to the law. She's happy about it, but she doesn't say that she did anything to make that happen. And anyway, you haven't answered Judge Barron's question about what a lawsuit would look like. What are the facts that would warrant any injunctive relief? I believe the Attorney General attempted to make this point. We don't intervene unless there is a case or controversy. It's hard to see what case or controversy exists at this point. The state needs to meet McClellan's narrow tailoring at the point of their delegation of authority in adopting the statute. It's not when the private clinics decide to use that statute at some point in the future that they can see if the private entity has enough basis to meet the narrow tailoring in court. That then strikes me as getting into the merits. Should this power ever be exercised? But it has not been. So what is it that judges are supposed to do? The judges are to apply McClellan to the state's delegation of power, which the state has admitted they can't do now. And you think it's unconstitutional on its face? Correct. It follows from what you said. So in that analysis, what we do is we take the maximum power that was conferred. Correct. And we say, could you possibly have a 35-foot buffer with no record? You'd say, no, you couldn't. Therefore, the whole thing has to fall. Correct. Okay, thank you. Thank you.